IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ERIC ENDECOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-2190-JTM-GEB |
| | ) |
| COMMERCIAL FLOORWORKS, | ) |
| INC., and JAMES E. PEDERSON, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Leave to Amend their Answer (**ECF No. 43**). For the reasons set forth below, Defendants' motion is **GRANTED**.

## I.   Background[1]

### A.   Nature of the Case

This dispute arises from an employee's claims of misclassification, unpaid earnings, and wrongful termination. Plaintiff Eric Endecott was a project manager employed by defendant Commercial Floorworks, Inc. ("CFW"), and its President, James E. Pederson, from approximately 2006 through September 25, 2015. As a project manager, Plaintiff bid, sold, and managed commercial flooring projects on behalf of

---

[1] The information recited in this section is taken from the pleadings (Compl., ECF No. 1; Answer, ECF No. 7), and from the parties' briefs regarding Defendants' Motion to Amend (ECF Nos. 43, 44, 47, 51). This background information should not be construed as judicial findings or factual determinations.

CFW in both Kansas and Missouri. Plaintiff was not paid a salary, but he was compensated through commissions, calculated as a percentage of gross profits, minus specified expenses, on each flooring project. Plaintiff was paid through a guaranteed weekly draw against his commission account.

Plaintiff claims Defendants misclassified him as an exempt employee under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, ("FLSA") and failed to pay him overtime wages, although he worked approximately 60 hours each week. Plaintiff alleges other FLSA violations, including Defendants' failure to maintain accurate records of his hours worked. Additionally, he contends Defendants incorrectly calculated his commissions, in violation of the Kansas Wage Payment Act, K.S.A. § 44-313, *et seq.* ("KWPA"). He claims Defendants applied a lower commission rate than agreed upon and erroneously deducted items from his commission account which were not true expenses.

While still employed by CFW, and after discovering what he believed were missing commissions, Plaintiff sent a demand letter to Defendants in August 2015, outlining his FLSA and KWPA claims. One month later, Plaintiff's employment was terminated. He now brings claims for unpaid overtime and retaliation under the FLSA, unpaid wages under the KWPA, and a common law claim of retaliatory discharge.

Defendants deny Plaintiff's allegations, and claim he was terminated due to poor performance. Defendants also claim their customers were leaving due to Plaintiff's neglect of his accounts. According to Defendants, when Plaintiff's draw against his

commission exceeded his earned commission, Defendants suspended his ability to draw against unearned commission. Because Plaintiff refused to work, he was terminated.

B.     **Procedural Posture**

Plaintiff filed this lawsuit on March 24, 2016 (ECF No. 1), and Defendants timely filed an Answer (ECF No. 7). A Scheduling Order was entered on July 15, 2016, establishing a deadline of August 30, 2016, for any motions to amend the pleadings (ECF No. 15).

In August 2016, Defendants served initial written discovery requests, asking Plaintiff to produce his federal and state tax returns for the years he was employed by Defendants. In Plaintiff's responses, he produced his IRS Form W-2s and 1099s, but he objected to producing the returns themselves. More than a month later, Defendants sought an extension of the deadline for a motion to compel (ECF No. 32), which Plaintiff opposed. In November 2016, after the parties were unable to agree on production of the returns, Defendants finally obtained Plaintiff's 2013 tax return through an alternate avenue—the court file in Plaintiff's divorce case, which also included hearing transcripts.[2] During a telephone conference on November 22, 2016 with the undersigned U.S. Magistrate Judge regarding the parties' outstanding discovery disputes, the Court, after first determining the relevance of the 2014-15 tax returns to the overall case, ordered Plaintiff to produce the returns by December 16, 2016 (ECF No. 33).

---

[2] *Endecott v. Endecott*, No. 2014 DM 84, District Court of Douglas County, Kansas (cited by Defs.' Mem., ECF No. 44 at 3).

As a result of information gleaned from the tax documents and divorce hearing transcripts, Defendants propounded a second set of written discovery to Plaintiff on November 30, 2016 (ECF No. 36), regarding the additional income Plaintiff received in 2013-14. In Plaintiff's January 6, 2017 responses, he confirmed he received "specifier fees" from three of Defendants' vendors during 2013-14. Defendants contend it was their policy for these specifier fees to be paid directly to CFW, not directly to the Sales Manager, and the fee would be credited to the Sales Manager when calculating commissions. Defendants assert any effort by a Sales Manager to "divert and/or accept a specifier fee directly is grounds for termination" (ECF No. 44 at 5).

Having discovered Plaintiff's receipt of the specifier fees, Defendants now wish to amend their Answer to include the "after-acquired-evidence"[3] affirmative defense to Plaintiff's claims. Additionally, Defendants seek to include a counterclaim against Plaintiff for the specifier fees he wrongfully retained, asserting claims of conversion, breach of duty of loyalty, unjust enrichment, and fraudulent concealment. Defendants filed their motion to amend on January 18, 2017, and the Court convened what was scheduled as a pretrial conference on January 25, 2017. As a result of discussion

---

[3] After-acquired evidence in employment law is evidence the employer learns after firing an employee, for which the employer would have fired the employee anyway. "The doctrine either shields the employer from liability or limits the available relief when, after an employee has been terminated, the employer learns for the first time that the employee engaged in wrongdoing that would have resulted in a discharge anyway." Black's Law Dictionary (10th ed. 2014). Use of the after-acquired evidence doctrine in an employment discrimination case was examined by the U.S. Supreme Court in *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995). "As a general rule, neither front pay nor reinstatement is an appropriate remedy in these circumstances and back pay may be limited 'from the date of the unlawful discharge to the date the new information was discovered.'" *Housley v. Spirit Aerosystems, Inc.*, 628 F. App'x 571, 575 (10th Cir. 2015) (citing *McKennon*, 513 U.S. at 361-63).

regarding the sought-after amendment during the conference, the Court cancelled the pretrial conference and suspended all pending deadlines. The Court ordered the pretrial conference, dispositive motion deadline, and jury trial to be rescheduled after its ruling on Defendants' instant Motion (ECF No.46).

## II.     Motion to Amend (ECF No. 43)

Fed. R. Civ. P. 15 establishes the standard for amending pleadings, while Rule 13 specifically addresses the filing of counterclaims and crossclaims. Additionally, Rule 16 provides the general framework for pretrial management. All three rules are implicated by Defendants' motion, with Rule 15 providing the starting point.

### A.     Amendment under Fed. R. Civ. P. 15

The standard for permitting a party to amend his or her pleadings is well established. A party may amend its pleading as a matter of course under Fed. R. Civ. P. 15(a)(1) within 21 days after serving it. However, in cases such as this, where the time to amend as a matter of course has passed, without the opposing party's consent, a party may amend a pleading only by leave of the court under Rule 15(a)(2).

Rule 15(a)(2) provides leave "shall be freely given when justice so requires," and the decision to allow an amendment is within the sound discretion of the court.[4] The court considers a number of factors in deciding whether to allow an amendment,

---

[4] *See J. Vangel Elec., Inc. v. Sugar Creek Packing Co.*, No. 11–2112–EFM, 2012 WL 5995283, at *2 (D. Kan. Nov. 30, 2012) (citing *Panis v. Mission Hills Bank*, 60 F.3d 1486, 1494 (10th Cir. 1995)).

including timeliness, prejudice to the other party, bad faith, and futility of amendment.[5] In exercising its discretion, the court must be "mindful of the spirit of the federal rules of civil procedure to encourage decisions on the merits rather than on mere technicalities."[6] The Tenth Circuit acknowledged that Rule 15 is intended "to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties,'"[7] especially in the absence of bad faith by an offending party or prejudice to a non-moving party.[8]

### B. Counterclaim - Fed. R. Civ. P. 13

Because Defendants seek not only to amend their answer but to add a counterclaim, it is also appropriate for the Court to consider Rule 13. Rule 13(a)(1) requires a "compulsory counterclaim" if a defendant's claim "arises out of the transaction or occurrence that is the subject matter of the [plaintiff]'s claim and does not require adding another party over whom the court cannot acquire jurisdiction." In the event the counterclaim is not filed with the initial answer, Rule 13(e) gives the court discretion to "permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading."

---

[5] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Monge v. St. Francis Health Ctr., Inc.*, No. 12–2269–EFM-JPO, 2013 WL 328957, at *2 (D. Kan. Jan. 10, 2013) report and recommendation adopted, 2013 WL 328986 (D. Kan. Jan. 29, 2013).

[6] *Hinkle v. Mid-Continent Cas. Co.*, No. 11–2652–JTM-KMH, 2012 WL 2581000, at *1 (D. Kan. July 3, 2012) (citing *Koch v. Koch Indus.*, 127 F.R.D. 206, 209 (D. Kan. 1989)).

[7] *Carefusion 213, LLC v. Professional Disposables, Inc.*, No. 09–2616–KHV–DJW, 2010 WL 4004874, at *4 (D. Kan. Oct. 12, 2010) (citing *Minter*, 451 F.3d at 1204) (quoting *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).

[8] *See AK Steel Corp. v. PAC Operating Ltd. P'ship*, No. 15-9260-CM-GEB, 2016 WL 6163832, at *4 (D. Kan. Oct. 24, 2016) (collecting cases; internal citations omitted).

### C. Good Cause – Fed. R. Civ. P. 16

When a proposed amendment is offered after the deadline to amend pleadings has passed, Fed. R. Civ. P. 16(b)(4) is implicated. It provides that a "schedule may be modified only for good cause and with the judge's consent." When considering a motion to amend the pleadings filed past the scheduling order deadline, "judges in this District have consistently applied a two-step analysis based on both Rule 16(b) and Rule 15(a)."[9] In such cases, the court "first determines whether the moving party has established good cause within the meaning of Rule 16(b)(4) so as to justify allowing the untimely motion."[10] Only after finding good cause has been shown will the court proceed to the second step and evaluate whether the broader Rule 15(a) standard for amendment has been satisfied.

"Good cause" under Rule 16(b)(4) requires the moving party to "show that the amendment deadline could not have been met even if it had acted with due diligence."[11] "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."[12] The party requesting an untimely amendment "is normally expected to show good faith on its part and some reasonable basis for not meeting the deadline."[13] The district court has discretion to decide whether the movant has established good cause

---

[9] *Carefusion 213*, 2010 WL 4004874, at *3 (citations omitted).
[10] *Id*.
[11] *Id*.
[12] *Livingston v. Sodexo & Affiliated Co.*, No. 11-4162-EFM-KGS, 2012 WL 2045292, at *1 (D. Kan. June 6, 2012) (citing *Deghand v. Wal–Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995) (internal citations omitted)).
[13] *Id.*

sufficient to modify the scheduling order deadlines, and such a decision is reviewed only for abuse of discretion.[14] With these standards in mind, the Court evaluates Defendants' motion.

## D. Discussion

Defendants contend they could not have sought amendment prior to the August 30, 2016 Scheduling Order deadline, because they were unaware of the context of Plaintiff's receipt of the specifier fees until he confirmed it in his January 2017 discovery responses. Therefore, they believe good cause has been demonstrated for amendment after the Scheduling Order deadline, and justice requires an order permitting assertion of the new defense and claims.

Plaintiff disputes Defendants' assertion of good cause, and of the factors analyzed by the Court when considering amendment of pleadings, Plaintiff opposes the amendment on three grounds: undue delay, undue prejudice, and futility. Plaintiff argues Defendants lacked diligence, because the 1099's should have alerted them to Plaintiff's additional income as early as October 3, 2016. Allowing Defendants to amend their answer at this late stage of the lawsuit would require reopening discovery, which would significantly affect the schedule of the case. Finally, Plaintiff contends Defendants' proposed conversion and breach of duty of loyalty claims, along with a portion of the unjust enrichment claims, are futile, because the statutes of limitations for those claims has expired. Although Plaintiff admits Defendants could timely assert a fraud claim, he

---

[14] *Carefusion 213*, 2010 WL 4004874, at *3 (citations omitted).

argues the proposed counterclaim does not plead fraud with particularity; therefore, the claim is subject to dismissal.  Each argument raised by the parties is addressed in turn.

   1.   **Good Cause**

The parties' arguments regarding whether Defendants demonstrated good cause for their request, filed nearly five months after the deadline for amendment, can be narrowed to a primary question:  whether Defendants should have known, based upon the limited tax information (form W-2's and 1099's) provided by Plaintiff in October 2016, that Plaintiff accepted specifier fees.  Although the 1099's alerted Defendants to three payments to Plaintiff from known vendors, Defendants claim they had no reason to suspect, based upon only the 1099 forms, the income was from specifier fees paid on a project where CFW lost the bid to a competitor.  And, after reviewing the divorce file in late November 2016, although Defendants suspected the 2013 payments were from specifier fees, no information regarding 2014 income was included in the divorce file.  Until Plaintiff confirmed the source and basis for both the 2013 and 2014 income in his January 2017 discovery responses, Defendants felt they did not have adequate information to bring new but non-frivolous claims.  Defendants filed their motion to amend one week after reviewing Plaintiff's January 2017 discovery responses.

Regardless of what Defendants knew, or what Plaintiff argues they should have known—in October or November 2016, or January 2017—the parties agree Defendants' knowledge about the specifier fees occurred *after* the Scheduling Order deadline to amend pleadings.  The question is a matter of how long after.  With only three months

9

truly in question, the Court finds no carelessness on the part of Defendants in waiting to clarify their suspicions with written discovery before seeking to amend.[15] During those months, the parties were actively engaged in discovery, mediation, and ongoing disputes regarding the production of Plaintiff's tax returns and other discovery, and had been in communication with the Court about those disputes (as evidenced by the November 22, 2016 telephone conference). Defendants demonstrated good faith, and a reasonable basis for not meeting the deadline to seek amendment, given the Plaintiff's January 6, 2017 discovery responses and the filing of the motion to amend only twelve days later. Therefore, the Court finds good cause under Rule 16(b)(4) for Defendants' failure to timely seek amendment prior to the scheduling order deadline, and continues its analysis of the standards for amendment.

### 2. Timeliness

Upon a finding of good cause under Rule 16, the Court must assess whether the standards for amendment under Rule 15 (a)(2) have been satisfied. Combined with his good cause analysis, Plaintiff focuses on the timing of Defendants' motion to amend. He asserts Defendants lacked diligence in seeking additional information about the specifier fees after receiving the 1099's on October 3, 2016, and because Defendants should have

---

[15] *See Layne Christensen Co. v. Bro-Tech Corp.*, 2011 WL 3847076, at *4 (D. Kan. Aug. 29, 2011)(finding that defendant established good cause for amending its answer because the new information supporting the amended answer was obtained after the deadline for amendment); *Weeks v. McLaughlin*, No. 09-2498-CM-GLR, 2010 WL 4115390, at *2 (D. Kan. Oct. 19, 2010) (finding defendant did not unduly delay in filing their motion to amend the answer when they held suspicions, but waited to seek amendment until after receiving written discovery responses which "provided added information to support the suspicions").

known, for nearly three months, that Plaintiff received specifier fees, their motion is untimely. Plaintiff cites a recent District of Kansas case, *Klaassen v. Atkinson*,[16] to support his argument. In *Klaasen*, the plaintiff, in seeking to file a *fourth* amended complaint, informed the court during a conference of his intent to amend, three months prior to actually filing a motion, but he failed to adequately explain his delay in doing so.

Likewise, Plaintiff cites to the Tenth Circuit case of *Birch v. Polaris Industries, Inc.*,[17] to support its argument that the three-month delay—between receipt of the 1099's in October and the filing of Defendants' motion to amend—is undue. Similar to this case, the parties in *Birch* disputed how long the plaintiffs should have been aware of the information underlying the proposed amendment. The court found, at *latest*, the *Birch* plaintiffs should have understood the implications of the new evidence at least four months prior to seeking amendment, but failed to offer any explanation for their four-month delay.[18]

But *Klaasen* and *Birch* are each distinguishable from the facts at hand. This is Defendants' first request to amend—not the fourth, as in *Klaasen*. For the reasons discussed above, the Court finds Defendants adequately explained and demonstrated good cause for their delay, which was three months at worst, and only one week at best. Therefore, Defendants' motion will not be denied on the basis of untimeliness under Rule 15(a)(2).

---

[16] No. 13-2561-DDC, 2016 WL 1715434, at *3 (D. Kan. Apr. 29, 2016) (citing *Minter*, 451 F.3d at 1206).
[17] 812 F.3d 1238 (10th Cir. 2015).
[18] *Id*. at 1248-49.

### 3. Undue Prejudice

As the party opposing the amendment, Plaintiff bears the burden to demonstrate undue prejudice within the meaning of Rule 15.[19] Under Rule 15, "undue prejudice" means "undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the movant."[20] While any amendment invariably causes some "practical prejudice," undue prejudice means the amendment "would work an injustice to the defendants."[21]

Considering this "most important factor,"[22] the Court finds Plaintiff does not demonstrate prejudice sufficient to prohibit the proposed amendment. Defendants' proposed counterclaim does not require the addition of new parties. And although the original discovery deadline has passed, the Court has already suspended all remaining deadlines, and the parties essentially agree to reopen discovery (despite disagreement on the terms of doing so). The discovery required on Defendants' defense and counterclaim should not be extensive, and both parties will be permitted equal opportunities to conduct meaningful discovery.

Plaintiff's claim of prejudice focuses on the rescheduling of deadlines and necessity for additional discovery. But equally important to this Court is, whether

---

[19] *Carefusion 213*, 2010 WL 4004874, at *4 (internal citations omitted).
[20] *Id*. (citing *U.S. v. Sturdevant,* No. 07–2233–KHV–DJW, 2008 WL 4198598, at *3 (D. Kan. Sept. 11, 2008) (citing *Minter*, 451 F.3d at 1208; *Jones v. Wildgen,* 349 F. Supp. 2d 1358, 1361 (D. Kan. 2004))).
[21] *Id*. (citing *Sturdevant,* 2008 WL 4198598, at *3; other internal citations omitted).
[22] *Minter*, 451 F.3d at 1207 (noting, "The second, and most important, factor in deciding a motion to amend the pleadings, is whether the amendment would prejudice the nonmoving party.")

Defendants assert their counterclaim in this action, or file a separate action, it is clear they intend to make those claims. Permitting Defendants to do so within this case, already in progress, furthers the interests of economy and efficiency for both the court and the parties.

In addition to the scheduling modifications and additional discovery, Plaintiff claims he has been prejudiced due to Defendants' failure to disclose a written policy regarding specifier fees. Plaintiff contends he did not have an opportunity to request the information through the discovery process, and despite repeatedly being requested to produce all policies applicable to Plaintiff, Defendants failed to produce it. The Court finds this argument unpersuasive in the context of a motion to amend, and Plaintiff will be afforded adequate opportunity to issue additional, pointed and intentional discovery requests to Defendants on this topic, which alleviates any concern of prejudice.

### 4. Futility

Finding Defendants demonstrated good cause for their delay in seeking amendment, and no undue prejudice exists, the Court next considers whether the amendment would be futile. As the party opposing amendment, Plaintiff bears the burden of establishing its futility.[23] "A proposed amendment is futile if the amended

---

[23] *Neonatal Prod. Grp., Inc. v. Shields*, No. 13-2601-DDC-KGS, 2015 WL 1957782, at *2 (citing *Boykin v. CFS Enter., Inc.,* No. 08–2249–CM–GLR, 2008 WL 4534400, at *1 (D. Kan. Oct. 6, 2008)).

13

answer containing a counterclaim would be subject to dismissal."[24] The proposed pleading is then analyzed using the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). When utilizing this standard, "the court must accept as true all well-pleaded factual allegations and view them in the light most favorable to the pleading party."[25] Only if the court finds "the proposed claims do not contain enough facts to state a claim for relief that are plausible on their face or the claims otherwise fail as a matter of law"[26] should the court find the amendment futile. Some courts in the District of Kansas have analyzed statute of limitations issues when determining futility of amendment.[27]

### a. Statute of Limitations Concerns

The parties agree Defendants' proposed conversion and breach of duty of loyalty claims are subject to a two-year statute of limitations, under K.S.A. § 60-513(a)(2)[28] and §60-513(a)(4),[29] respectively. The parties disagree, however, regarding when the

---

[24] *BAC Local Union 15 Welfare Fund v. McGill Restoration, Inc.*, No. 16-CV-2082-JAR-TJJ, 2016 WL 7179464, at *3 (D. Kan. Dec. 9, 2016) (citing *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008)).
[25] *Carefusion 213*, 2010 WL 4004874, at *5 (citing *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) (internal citations omitted)).
[26] *Id.* (citing *Raytheon Aircraft Co. v. U.S.,* 501 F. Supp. 2d 1323, 1327 (D. Kan. 2007); *see also Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).
[27] *Price v. McKee*, No. 12-1432-CM-DJW, 2013 WL 3388905, at *2 (D. Kan. July 8, 2013) (citing *Cook v. Olathe Health Sys., Inc.,* No. 10–CV–2133–KHV–DJW, 2010 WL 5479686, at *2 (D. Kan. Dec. 30, 2010), and *Lewis v. Wheeles,* No. 08–4025–JAR, 2008 WL 2944903, at *1–2 (D. Kan. July 28, 2008) (each denying a motion to amend complaint as futile because the proposed claim would be barred by the applicable statute of limitations)).
[28] *See Armstrong v. Bromley Quarry & Asphalt, Inc.*, 378 P.3d 1090, 1096 (Kan. 2016) (conversion claim is subject to a two-year statute of limitations under K.S.A. § 60–513(a)(2)).
[29] *See Resolution Trust Corp. v. Scaletty*, 257 Kan. 348, 353 (1995) (applying the two-year statute of limitations in K.S.A. § 60-513(a)(4) to a breach of loyalty claim).

limitations periods accrue. Plaintiff contends the limitations periods run from the date of the specifier fee payments in 2013-14 and are not tolled by his concealment of the payments; therefore, the limitations periods on both claims have expired. Plaintiff argues, even if his alleged fraud was the reason the limitations period expired prior to Defendants' bringing the claim, Defendants may still bring their claim for fraudulent concealment (ECF No. 47, at 10).

Plaintiff relies upon a Kansas Court of Appeals case, *Robinson v. Shah*,[30] involving a case of medical malpractice, to support its argument that the conversion and breach of loyalty claims are subject to dismissal. But the Court agrees with Defendants that Plaintiff's reliance on *Robinson* is misplaced. There, the Kansas Court of Appeals specifically noted, ". . . in Kansas, the *only* tort which is not tolled by fraudulent concealment is one involving medical malpractice."[31] Defendants' argue, convincingly, the limitations periods for the claims in this case do not begin to accrue "until the fact of injury becomes reasonably ascertainable to the injured party" under K.S.A. § 60-513(b)—the Kansas "discovery rule."[32] Therefore, even assuming Defendants should have understood the basis for the income disclosed on the 1099's in October 2016, the statute of limitations on neither claim would begin to accrue until then.

---

[30] 23 Kan. App. 2d 812, 818 (1997) (emphasis added) (discussing why the Kansas Supreme Court has refused to apply the doctrine of fraudulent concealment to medical malpractice actions).
[31] *Robinson*, 936 P.2d at 795.
[32] *Northern Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629-30 (10th Cir. 2008) (explaining the "discovery rule"); *see also Unicredit Bank AG v. Jue-Thompson*, No. 12-CV-2468-EFM, 2013 WL 6185750, at *6 (D. Kan. Nov. 26, 2013) (discussing the "discovery rule").

The parties disagree on the limitations period applicable to Defendants' proposed unjust enrichment claim: Plaintiff cites K.S.A. § 60-512, which sounds in contract, to argue a three-year limitations period applies,[33] while Defendants contend the applicable limitations period is only two years under K.S.A. § 60-513(a)(2) for tortious unjust enrichment.[34] Regardless of whether the limitations period is two or three years, in this instance, Defendants again reason the discovery rule applies to toll the applicable limitations period until the injury became reasonably ascertainable, sometime between October 2016 and January 2017.

Although the Court tends to agree the discovery rule works in Defendants' favor, the motion for leave to amend pleadings is not the appropriate context in which to determine which statute is applicable or when CFW's alleged injury became reasonably ascertainable.[35] The issue before the Court, in this motion, is whether Defendants have *sufficiently alleged* in the proposed counterclaim, that their injury became reasonably ascertainable within the statute of limitations. In the proposed counterclaim, Defendants allege they first learned about the 2013-14 specifier fees when reviewing the divorce case transcript.[36] Therefore, Defendants specifically allege their injury did not become reasonably ascertainable until November 22, 2016, at the earliest. Viewing these facts in

---

[33] K.S.A. § 60-512 supplies a three year limitations period for "actions upon contracts, obligations or liabilities expressed or implied but not in writing."

[34] *Thompson v. Harness*, No. 11-1220-JTM, 2012 WL 2449851, at *3-*4 (D. Kan. June 26, 2012) (discussing claims of tortious interference and unjust enrichment, and applying the two-year statute of limitations and the discovery rule of *Northern Natural Gas Co*., 526 F.3d at 629-30.)

[35] *Thompson*, 2012 WL 2449851, at *4.

[36] Defendants' proposed First Amended Answer and Counterclaim, ECF No. 43, Ex. 1, at 21, ¶ 19.

the light most favorable to Defendants, as this Court is required to do, the proposed counterclaim does not appear futile, on its face, on the issue of the statute of limitations.

### b. Particularity – Fraud

Plaintiff's final argument regarding futility focuses on Defendants' proposed fraudulent concealment claim. Fed. R. Civ. P. 9(b) requires a party to "state with particularity the circumstances constituting fraud." Plaintiff contends Defendants' fraud claim is subject to dismissal, because it does not adequately plead particular facts. Additionally, because Defendants did not provide evidence of any specifier fee policy preventing Plaintiff from receiving those fees, or that Defendants actually communicated such policy to either Plaintiff or the vendors,[37] Plaintiff asserts Defendants' claim is not viable.

At this stage, Defendants are not required to prove their allegations with evidence, but are merely required by Rule 9(b) to articulate in detail the circumstances constituting fraud. In the proposed counterclaim, Defendants specifically assert Plaintiff occupied "a position of the highest trust"[38]—he acted as a Sales Manager, with direct contact with customers and control over entry of bids, proposals and specification fee credits for entry into CFW's accounting system. Defendants contend he abused his position "for his own personal benefit and enrichment to the detriment of" CFW[39] and described the facts which led Defendants to believe he intentionally concealed his receipt of the fees.

---

[37] *See* discussion of policy *supra* p. 4, ¶ 1 and p. 13, ¶ 2.
[38] Defendants' proposed First Amended Answer and Counterclaim, ECF No. 43-1, Ex. 1, at 18, ¶ 10.
[39] *Id*., at 21, ¶ 16.

Although Defendants do not cite a specific policy Plaintiff is claimed to have violated (and in fact have conceded none exists), on the face of the counterclaim, Defendants couch Plaintiff's obligation as one of a duty borne of his position, not one borne from policy. The lack of assertion of policy is an evidentiary issue for the parties to dispute in a later dispositive motion under Rule 12(b)(6) or Rule 56;[40] not one to be decided at this juncture.

Based upon the facts alleged in the proposed answer and counterclaim, and construing all reasonable inferences from those facts in favor of Defendants,[41] the Court cannot conclude that Defendants' counterclaim could not withstand a motion to dismiss. Because the proposed claims appear plausible, on the face of the proposed amendment,[42] the Court will not deny, as futile, Defendants' request to file its amended answer under Rule 15(a) and its counterclaim under Rule 13(e).

### C. Fees

In the event Defendants' motion to amend is granted, Plaintiff asks that the costs of any additional depositions be borne by Defendants, including all costs for the court reporters, videographer, and Plaintiff's attorney's fees (ECF No. 47 at 9). Plaintiff cites no authority for the shifting of costs, and the Court assumes he requests costs under the

---

[40] *See Walker v. Axalta Coating Sys., LLC*, No. 14-2105-JAR-JPO, 2015 WL 685834, at *3 (D. Kan. Feb. 18, 2015) (finding the issue of punitive damages more appropriately addressed at a later stage in the case by the presiding U.S. District Judge).

[41] *Gardner Grp., LLC v. Commonwealth Land Title Ins. Co.*, No. 15-9934-CM, 2017 WL 193165, at *3 (D. Kan. Jan. 18, 2017) (citing *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

[42] *See Carefusion 213*, 2010 WL 4004874, at *5 (internal citations omitted).

general pretrial sanctions provisions of Rule 16(f) or Rule 37(b), for Defendants' failure to meet the deadline for amendment set by the scheduling order. The language of both rules make clear costs or fees may be awarded when a party fails to obey a court order, "unless the failure was substantially justified or other circumstances make an award of expenses unjust."[43] However, Plaintiff has not accused Defendants of bad faith,[44] and as discussed above, Defendants have shown good cause for their delay in asserting the claims. Furthermore, additional discovery will benefit both parties (in fact, Plaintiff asserted prejudice due to its inability to complete discovery on the policy issue—which he will now have the chance to complete). On the facts of this dispute, and lacking evidence of bad faith, in its discretion the Court finds an award of expenses unjust. Each party will bear its own costs of additional discovery.

### D. Conclusion

Because this Court has determined Defendants' proposed counterclaim is not futile, on its face, and its filing would result in merely practical, rather than undue, prejudice, the Court in its discretion will allow Defendants to amend their answer under Rule 15(a) and assert their counterclaims under Rule 13(e). Because the Court prefers the case to proceed on its full merits,[45] in the interests of justice Defendants are permitted to file their amended answer and counterclaim.

---

[43] *See* Fed. R. Civ. P. 16( ), Fed. R. Civ. P. 37(b)(2)(C).
[44] *See Kiser v. Boeing Co.*, 163 F.R.D. 13, 15 (D. Kan. 1995) (discussing multiple factors, including bad faith, the court should consider when determining sanctions under Rule 1(f)).
[45] *See Hinkle*, 2012 WL 2581000, at *1 (citing *Koch*, 127 F.R.D. at 209).

**IT IS THEREFORE ORDERED** that Defendants' Motion for Leave to Amend their Answer (**ECF No. 43**) is **GRANTED**. Defendants must file their amended pleadings on or before **May 5, 2017**.

**IT IS FURTHER ORDERED** that the parties confer no later than **May 10, 2017**, regarding a revised schedule, and by **May 15, 2017**, Defendants must submit the completed report of the parties' supplemental planning conference to the chambers of the undersigned magistrate judge.

**IT IS FURTHER ORDERED** that the undersigned U.S. Magistrate Judge will conduct a supplemental scheduling conference on **May 23, 2017 at 2:00 p.m.** The conference will be held by telephone and will be initiated by the court.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 2nd day of May, 2017.

  s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge